## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| GARY MERCER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER OF SOCIAL )<br>SECURITY ADMINISTRATION, )<br>)<br>Defendant. ) | Case Number: 2:17-cv-02158-JHE |

### MEMORANDUM OPINION[1]

Plaintiff Gary Mercer ("Mercer") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability and disability insurance benefits ("DIB"). (Doc. 1). Mercer timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **REVERSED AND REMANDED**.

### I. Factual and Procedural History

Mercer filed an application for a period of disability and DIB on December 21, 2012, alleging he became unable to work beginning February 1, 2012. (Tr. 191, 339-43). The Agency initially denied Mercer's application (tr. 225-29), and Mercer requested a hearing. A hearing was held before an Administrative Law Judge ("ALJ") on June 23, 2014. (Tr. 156-88). By decision

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 9).

dated July 28, 2014, the ALJ found Mercer not disabled. (Tr. 203-19). On September 16, 2014, Mercer requested the Appeals Council review the ALJ's decision. (Tr. 285).

On October 30, 2015, the Appeals Council remanded Mercer's claim for a new hearing and decision. (Tr. 220-22). A second hearing was held before an ALJ on April 18, 2016. (Tr. 87-109). By decision dated August 31, 2016, the ALJ found Mercer not disabled. (Tr. 68-86). Mercer requested review by the Appeals Council (tr. 336-38), but it denied review on October 23, 2017 (tr. 1-7). On that date, the ALJ's decision became the final decision of the Commissioner. On December 22, 2017, Mercer initiated this action. (*See* doc. 1).

Born in 1952, Mercer was sixty-one-years-old at his date of last insured. He has a college education (tr. 92) and past relevant work as a certified financial officer, a certified public accountant, and a material sales person (tr. 105-06). Mercer alleges disability due to hypertension, cardiovascular disease, other cardiovascular disorder, brittle diabetes impairment, and diabetic neuropathy. (Tr. 339, 429). Mercer further contends that his "diabetes with multiple complications" is the primary cause of his alleged disability. (Doc. 13 at 3).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Mercer last met the insured status requirements of the Social Security Act on March 31, 2014 (his date last insured or "DLI"), and that Mercer did not engage in substantial gainful activity during the period from his alleged onset date of February 1, 2012

4

through his DLI.[4] (Tr. 73). At Step Two, the ALJ found Mercer has the following severe impairments: diabetes with diabetic ulcers on the feet and neuropathy, cirrhosis, hypertension, and atrial fibrillation. (Tr. 73-74). At Step Three, the ALJ found Mercer did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 74-75).

Before proceeding to Step Four, the ALJ determined Mercer's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that, through his DLI, Mercer had the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a), except Mercer was limited to no climbing of ropes, ladders, or scaffolds; could not work at unprotected heights or with hazardous machinery; was limited to occasional climbing of ramps or stairs and occasional use of foot controls bilaterally; could stand and/or walk up to one hour in an eight-hour workday. (Tr. 75-80).

At Step Four, the ALJ determined, through the date last insured, Mercer was capable of performing past relevant work as a chief financial officer and certified public accountant, as that work did not include the performance of any work-related activities precluded by Mercer's RFC. (Tr. 80). Therefore, the ALJ did not need to proceed to Step Five. The ALJ concluded that Mercer had not been under a disability and denied Mercer's claim. (*Id.*).

## V. Analysis[5]

Although the court may only reverse a finding of the Commissioner if it is not supported

---

[4] The ALJ noted that Mercer worked after the alleged disability onset date, but that such activity did not rise to the level of substantial gainful activity. (Tr. 73). Mercer's earning record shows earnings of $ 6,325.00 in 2013 and self-employment earnings of $ 11,635.00 in 2014. (Tr. 73, 405-09, 411-13, 415-424).

[5] On October 17, 2018, Mercer filed a letter to advise the court of a recent decision that he contends "requires remand." (Doc. 16). Specifically, he contends that "[i]n *Lucia v. SEC*,

by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Mercer challenges the Commissioner's decision on two specific grounds, contending: (1) the ALJ failed to properly weigh the medical opinion evidence and therefore failed to properly determine Mercer's RFC; and (2) the ALJ failed to properly evaluate Mercer's testimony pursuant to the Eleventh Circuit pain standard when determining his RFC. (Doc. 13 at 19- 28).

**A. Weight Accorded to the Opinions of Dr. Giammanco and Dr. Karassi**

Mercer asserts the ALJ failed to properly consider the opinions from Dr. Giammanco and Dr. Karassi. When determining the weight to give a physician's opinion, an ALJ considers numerous factors, including whether the physician examined the claimant, whether the physician treated the claimant, the evidence the physician presents to support his or her opinion, whether the

---

138 S. Ct. 2044 (2018), the Supreme Court held that ALJs are officers of the United States that must be appointed according to the constitution by the President or other delegated officer of the United States rather than hired by the Agency." (*Id.*) And, thus Mercer "object[ed] to the decision by the ALJ on the grounds that it was decided by an ALJ who was not constitutionally appointed at the time of the decision in this case." (*Id.*). Mercer concedes that his Appointment Clause challenge was not raised at any point during his administrative proceedings but contends that, under the reasoning of *Sims v. Apfel*, 530 U.S. 103 (2000), the judicially-imposed rule that an Appointments Clause challenge must be "timely" raised does not apply to administrative proceedings in Social Security disability determinations. (*Id.*).

However, as courts within this Circuit have recognized, a claimant can forfeit an Appointments Clause challenge to the ALJ who heard his case by failing to raise the challenge before the Social Security Administration, *Abbington v. Berryhill*, 1:17-00552-N, 2018 WL 6571208 (S.D. Ala. Dec. 13, 2018), and Mercer has not shown sufficient cause to excuse the forfeiture. To the extent Mercer requests remand on this issue, such request is **DENIED**.

physician's opinion is consistent with the record as a whole, and the physician's specialty. *See* 20 C.F.R. § 404.1527(c). A treating physician's opinion is generally entitled to more weight, and an ALJ must provide good reasons for discounting a treating physician's opinion. *See* 20 C.F.R. § 404.1527(c)(2); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

When considering whether to discount the weight accorded to an opinion, the ALJ must consider: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) the consistency of the opinion with the record as a whole; (5) the physician's specialization in the medical condition at issue; and, (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6). *See Glass v. Colvin*, No. 1:13-CV-1941, 2014 WL 4715788 *1 (N.D. Ala. Sept. 22, 2014) (holding an ALJ is required to consider factors in the Regulations when weighing any medical opinions). A court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

### 1. Dr. Natalie Giammanco, Treating Podiatrist

Mercer contends the ALJ erred when he accorded "little weight" to the opinions from his treating podiatrist Dr. Giammanco because the ALJ found them "inconsistent with unspecified evidence in the treatment notes and evidence that [Mercer] provided unspecified care for his wife before her death." (Doc. 13 at 20) (citing Tr. 79). In a May 21, 2014 statement, Dr. Giammanco opined that "the combination of pathologies, foot deformity, diabetic neuropathy and history of chronic ulcerations is a significant factor determining [Mercer's] ability to perform appropriately and sufficiently in the work place. (Tr. 674). In a July 2014 Diabetes Impairment Questionnaire, Dr. Giammanco opined that, in an eight-hour work day, Mercer could perform a job in a seated

7

position less than one hour and standing and/or walking less than one hour. (Tr. 701). She opined Mercer could never/rarely lift and/or carry any amount of weight. (*Id.*). She indicated it was medically necessary for Mercer to avoid continuous sitting and that he must elevate both legs while sitting. (Tr. 702). She further indicated he would need to take unscheduled breaks at unpredictable intervals during an eight-hour workday and he would be absent from work more than three times a month. (Tr. 702-03).

The ALJ provided two specific justifications for discounting Dr. Giammanco's opinions. (Tr. 79). The ALJ noted that the opinions were (1) inconsistent with the record as a whole, including Dr. Giammanco's treatment records, and (2) inconsistent with Mercer's reported activities of daily living." (Tr. 79); *see Hunter*, 808 F.3d at 823 ("[A court] will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it."). However, the ALJ noted that he agreed Mercer's "foot issues" were severe impairments and stated he accounted for them in his RFC. (Tr. 79). Mercer argues the ALJ's failure to specify what findings in the treatment records contradict Dr. Giammanco's opinions is reversible error. (Doc. 13 at 21).

In support of his conclusion, the ALJ cites the entirety of Dr. Giammanco's treatment records from 2011 through 2015, which encompass the relevant period from February 1, 2012 through March 31, 2014. (Tr. 79, 609-40, 649-59, 677-98, 704-802). Previously in his opinion, the ALJ reviewed these records. In April 2012, Mercer presented to Dr. Giammanco with complaints of long, thick, painful mycotic (fungal infection) toenails. (Tr. 615-16). He was noted to have bunions, hammer toes, and flat feet. Mercer was ambulatory without assistance, and Dr. Giammanco noted that Mercer did not have diabetic shoes or insoles. (*Id.*). She diagnosed symptomatic onychomycosis (fungal nail bed infection), pain, and type-2 diabetes mellitus with

8

peripheral neuropathy. (*Id.*). She debrided Mercer's toenails, applied foot cream, and recommended he return in two months (or less if needed). (*Id.*). The ALJ did not describe Mercer's June 2012 appointment. (Tr. 617-618). In September 2012, Mercer returned to Dr. Giammanco complaining of multiple ulcerations on his feet. (Tr. 619-20). Dr. Giammanco found neuropathic ulceration located at the plantar area with structural deformity. (*Id.*). The ulcers were grade 1. (*Id.*). She debrided the ulcers, applied cream, and prescribed Bactrim. (*Id.*). Dr. Giammanco debrided Mercer's ulcers four more times, approximately every two weeks, in September and October 2012. (Tr. 621-25). During his first October 2012 visit, Mercer also reported significant pain and inability to sleep because of neuropathic pain. (Tr. 623). In addition to treatment of his ulcerations, Dr. Giammanco provided a prescription for thirty Acetaminophen-HYDROcodone Bitartrate (500mg/7.5 mg), suggested Mercer return in one week, and instructed Mercer to see his primary care physician for his lethargy and pain. (Tr. 624). During the second October 2012 appointment, Mercer reported feeling better. (Tr. 625).

In November 2012, Mercer presented to Dr. Giammanco complaining of an open wound on his right foot for ten weeks. (Tr. 631-32). Dr. Giammanco assessed a grade 1A ulcer, which was described as a superficial wound not involving tendon capsule or bone. (*Id.*). Dr. Giammanco debrided the ulcer. (*Id.*). Treatment notes also indicate that painful elongated fungal nails on both feet was also a concern. (*Id.*).

Mercer saw Dr. Giammanco for ulcer debridement three more times before the end of 2012. (Tr. 633-38). In 2013, Mercer continued to present on a regular basis to Dr. Giammanco for ulcer and toenail debridement. (Tr. 634-40, 648-57).

After the DLI, Mercer continued treatment with Dr. Giammanco for onychomycosis and ulcerations. (577-98, 704-802). On February 9, 2016, Mercer underwent a partial amputation of

the right third toe and hammertoe repair of the right great toe. (Tr. 804-07). At the hearing, Mercer reported no complications from the surgery, but testified he had a small infection in his little toe that was being treated with antibiotics. (*See* tr. 78).

The ALJ pointed to several of Dr. Giammanco's opinions he claimed lacked support in the record. (Tr. 79). These include difficulty sitting for more than an hour, that it was medically necessary for Mercer to elevate both legs when sitting, that he should never/rarely lift or carry any amount of weight, and that he would be absent from work more than three times a month. (*Id.*). Dr. Giammanco's opinions that it would be difficult for Mercer to sit for more than an hour a day and that it was medically necessary for him to elevate both legs while sitting have support in the record. Specifically, Dr. Giammanco's treatment notes report that, at times, Mercer experienced lower extremity edema (swelling) (tr. 615, 617) that is alleviated by some movement and elevating his feet when seated. The records also note bilateral varicosities (tr. 620, 622, 624), which is alleviated by avoiding long periods of sitting or standing. Additionally, these records show consistent treatment for foot ulcerations and are replete with notations regarding Mercer's neuropathic pain and numbness, which account for some limitations on lifting and carrying,[6] as it would be dangerous if he cannot feel his legs and/or feet. As to other parts of the record, Dr. Malek Karassi also opined that Mercer needed to limit sitting, elevate his legs when sitting, would be absent from work more than three times a month, and imposed lift and carry restrictions. (Tr. 900-04).

As to the ALJ's second justification for according Dr. Giammanco's opinions "little weight," that Mercer provided some care to his wife prior to her death (tr. 79), this reason is not

---

[6] The undersigned notes that limiting Mercer to lifting nothing is unrealistic and contradictory to the fact Mercer can lift a can of soup.

10

support by the record. Mercer testified that, although his wife had pain in her hip, knees, and back, she could get around the house and take care of her daily activities up until she went into the hospital. (Tr. 94). He then testified that he had to call his son, and they took her to the hospital because "I could not take care of her." (*Id.*). Mercer's wife was admitted and died during her hospital stay. (*Id.*). Although Mercer has lived alone since his wife's death, the ALJ references no evidence that he engaged in any activities inconsistent with Dr. Giammanco's opinions.

### 2. Dr. Malek Karassi

Mercer also contends the ALJ erred when he accorded "little weight" to the opinions from his treating endocrinologist Dr. Malek Karassi. (Doc. 13 at 20-21). The ALJ asserted he discounted Dr. Karassi's opinions because they were inconsistent with the record as a whole and Dr. Karassi's treatment notes. (Tr. 79-80). The ALJ also noted that Mercer's diabetes and blood pressure were controlled. (Tr. 80). The ALJ also asserted that he discounted Dr. Karassi's opinion because it was inconsistent with Mercer's daily activities, including Mercer's care for his wife prior to her death. (citing Tr. 79-80). In March 2016, Dr. Karassi opined that in an eight-hour workday, Mercer could perform a job in a seated position for less than one hour and standing and/or walking less than one hour. (Tr. 900-04). He further opined that Mercer should avoid continuous sitting and would need to change positions every ten to fifteen minutes, and he must elevate his legs while sitting. (*Id.*). Dr. Karassi indicated Mercer could lift up to twenty pounds occasionally and carry up to five pounds occasionally. (*Id.*). He found Mercer to have significant limitations in reaching, handling, and fingering, and that he would need to take unscheduled breaks. (*Id.*). Dr. Karassi noted that Mercer would need to be absent from work more than three times a month. (*Id.*). In according "little weight" to these opinions, the ALJ cites the entirety of Dr. Karrassi's records. (Tr. 857-905).

11

In his decision, the ALJ noted that treatment records from Dr. Karassi in October 2012 indicate Mercer's diabetes was poorly controlled, as Mercer was overeating and not taking his medication regularly. (Tr. 76, 879). In October 2013, Dr. Karassi noted that Mercer ran out of medication and his diabetes was poorly controlled. (Tr. 76. 873). However, in April 2014, Dr. Karassi indicated he thought Mercer may not need any other antidiabetic agent if he took Metformin regularly and worked on his diet and that Mercer has always had good control of his diabetes without any antidiabetic medicine. (Tr. 76, 862). The ALJ also noted that, after Mercer's DLI, treatment records indicate Mercer's diabetes was under control when he complied with his diabetic regimen. (Tr. 76).

While the ALJ does not specify which findings in the treatment records he found to contradict Dr. Karassi's opinions, the Commissioner argues that Dr. Karassi's treatment notes fail to show such limitations as difficulty walking/standing, sitting, or needing to elevate his legs. (Doc. 14 at 10-11). The Commissioner points to Dr. Karassi's notes indicating Mercer denied having abnormal gait, difficulty walking, loss of balance, loss of coordination, or numbness (*id.* citing tr. 860, 870, 876, 880, 893, 896) and to Dr. Karassi's description that Mercer was in no apparent distress and had a "safe and stable gait" (*id.* citing 861, 863, 867, 871, 874, 877, 881, 883, 894). Mercer's normal gait and state of no apparent distress during a handful of appointments in 2012 through 2014 is hardly substantial evidence to discount Dr. Karassi's opinion without further explanation. The record demonstrates that Mercer suffers from diabetic neuropathy and ulcerations on his feet that gradually worsened throughout the relevant period. Dr. Karassi treated Mercer from 2007 through 2016, when he provided his opinions. It does not appear that the ALJ considered this longitudinal treatment history, the consistency between Dr. Giamannco's opinions and Dr. Karassi's opinions, or their specialties, which are directly related to Mercer's allegedly

disabling conditions. Furthermore, although Dr. Karassi's treatment notes do not specify physical limitations, the Commissioner's reasoning that such absence undermines Dr. Karassi's opinions is flawed. As the Eleventh Circuit (as well as other Circuits) have noted, "there is a 'distinction between a doctor's notes for purposes of treatment and that doctor's ultimate opinion on a claimant's ability to work.'" *Sampson v. Comm'r of Soc. Sec.*, 694 Fed. Appx. 727, 735 (11th Cir. 2017) (quoting *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 356 (3d Cir. 2008)). The mere fact that a doctor's judgments about a claimant's work-related limitations are not expressly reflected in treatment notes does not necessarily mean that the judgments are inconsistent with the treatment notes. *Id.* at 735-36. Dr. Karassi is an endocrinologist and his treatment notes were made for the purpose of treating Mercer's diabetes, not to define his ability to work.

As to the ALJ's second stated justification, any alleged inconsistency between Dr. Karassi's opinions and Mercer's activities of daily living, specifically caring for his wife and not supported by substantial evidence, as fully explained *supra*.

The ALJ's decision to accord Dr. Giammanco and Dr. Karassi's opinions little weight is not supported by substantial evidence. On remand, the ALJ should reevaluate these physician's opinions, and the effect of the reevaluation on his RFC finding.[7]

### 3. Eleventh Circuit Pain Standard

Alternatively, Mercer challenges the ALJ's finding regarding Mercer's allegations regarding the nature and severity of his condition. (Doc. 13 at 25-28). When a claimant attempts to establish a disability through subjective complaints of pain or other symptoms, he or she is required to show: (1) evidence of an underlying medical condition, and either (2) objective medical

---

[7] It is also worth noting that, although the record shows Mercer took medication for both pain and neuropathy, there is no indication the ALJ considered the effect of these medications on Mercer's RFC or the conclusion that Mercer could perform his past relevant work.

evidence that confirms the severity of the alleged pain or other symptoms arising from that condition, or (3) that the objectively determined medical condition is of such as severity that it can reasonably be expected to give rise to the alleged pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). A claimant's testimony coupled with evidence that meets this standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Hale v Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). If the ALJ discredits a claimant's subjective testimony, then the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1225.

SSR 16-3p, 2017 WL 5180304, directs the ALJ to consider a number of factors before making a conclusion regarding the validity of a claimant's testimony and resulting limitations, including (1) the individual's daily activities, (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms, (3) factors that precipitate and aggravate the symptoms, (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms, (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms, (6) measures other than treatment the individual uses or has used to relieve pain or other symptoms, and (7) any other relevant factors concerning the individual's functional limitations and restrictions.

Here, the ALJ noted that he "careful[ly] considered the evidence . . . [and found] that [Mercer's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Mercer's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 76). The ALJ articulated three

reasons for not fully crediting Mercer's allegations. First, the ALJ stated that "[t]he evidence of record does not support the severity of symptoms and limitations alleged by [Mercer]" because "[Mercer's] treatment records fail to reveal the type of significant clinical and laboratory abnormalities one would expect if [Mercer] were in fact disabled." (*Id.*). Second, the ALJ states that Mercer "has not been fully complaint with his diabetic regimen" and provides examples from May 2012, October 2012, October 2013, April 2014, and November 2014. (*Id.*). Third, the ALJ noted that Mercer was able to care for his sick wife, highlighting that this was both physically and emotionally demanding. (Tr. 78).

As an initial matter, and as noted *supra*, there is nothing in the record to support the assertion that Mercer cared for his sick wife before her death. To the contrary, Mercer testified that, although his wife had pain in her hip, knees, and back, she could get around the house and take care of her daily activities up until she went into the hospital. (Tr. 94). He then testified that he had to call his son, and they took her to the hospital because "I could not take care of her." (*Id.*). Mercer's wife was admitted and died during her hospital stay. (*Id.*). Although Mercer has lived alone since his wife's death, there is no evidence that he engaged in any activities that contradict his subjective complaints.

The ALJ also found that Mercer's allegations are inconsistent with the evidence of record because "treatment records fail to reveal the type of significant clinical and laboratory abnormalities one would expect to find." (Tr. 76). Although objective medical evidence is a useful indicator in evaluating a claimant's symptoms, a claimant's statements about the intensity and persistence of his pain or other symptoms or about the effect his symptoms have on his ability to work will not be rejected solely because the available objective medical evidence does not substantiate a claimant's statements. 20 C.F.R. § 404.1529(c)(2). In support of the ALJ's finding,

15

the Commissioner points to treatment records indicating Mercer denied having an abnormal gait, difficulty walking, loss of balance, loss of coordination, or numbness during some appointments. (Tr. 860, 870, 876, 880, 893, 896). The Commissioner also highlights that Dr. Karassi, Mercer's endocrinologist, consistently described Mercer as in "no apparent distress" and having a "safe and stable" gait." (Tr. 861, 863, 867, 871, 874, 877, 881, 883, 894). These minimal findings at some appointments do not undermine the fact that the severity of some conditions cannot always be measured objectively through clinical or laboratory testing. *See* SSR 16-3p. Furthermore, Mercer's denial of issues performing these basic physical tasks at some appointments and lack of apparent distress hardly discredit his testimony regarding the severity of his symptoms. It is apparent from the record that Mercer's condition was progressing, and the denial of a symptom in 2012 does not mean he was not suffering from that symptom in 2014.

Furthermore, as to the ALJ's finding of noncompliance, Mercer argues that it is important to recognize that Mercer lost his health insurance in 2011, and had limited treatment as a result until January 2016. (Tr. 96, 164-65). A claimant's lack of health insurance and thus inability to afford treatment during the relevant period cannot be held against him under the guise of "non-compliance." *See Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988).[8] However, in this case, the ALJ also pointed to Mercer's non-compliance as his failure to be fully compliant with his diabetic regimen, which could reasonably be perceived as unrelated to his lack of insurance or inability to afford care/medication. *See Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (non-compliance with recommended treatment can be an acceptable factor in discrediting subjective complaints). Regardless of Mercer's insured status, the ALJ specifically referenced Mercer

---

[8] Furthermore, in 2014, Mercer testified he received some help with prescription medication from "Advocate" and had not pursued other sources of free or reduced care. (Tr. 164-65).

16

overeating or otherwise being noncompliant with diet and not monitoring his blood sugar. (tr. 76, 505, 541, 647, 838, 859, 860, 862, 866, 869, 873, 875, 879, 882, 892, 895).

While non-compliance with recommended treatment can be an acceptable factor in discrediting subjective complaints and the ALJ explicitly stated this reason, this, coupled with the basic findings above, do not constitute substantial evidence to discredit Mercer's complaints of pain when it does not appear the ALJ considered other relevant factors. The cited instances of diet and monitoring non-compliance the ALJ cites are undermined by the fact that Mercer consistently sought treatment for his symptoms from his podiatrist, endocrinologist, and rheumatologist throughout this period. There is also no indication the ALJ considered Mercer's other treatment in this context, such as his continual treatment for foot ulcerations leading to ultimate partial toe amputation or his knee injection in May 2014, tr. 665-66. Furthermore, there is no indication the ALJ considered the medication doctors prescribed Mercer (or its effect on him), including Dr. Paul's consistent 10/325mg Norco or Lortab every four hours prescription for pain, tr. 665-70, 828-43, and other medications for neuropathy. The ALJ erred when he discredited Mercer's subjective complaints without more evidence or explanation. On remand, the ALJ should also reconsider Mercer's subjective complaints as outlined in the Social Security Regulations and other guidance.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Mercer's claim for a period of disability and disability insurance benefits is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this opinion.

DONE this 29th day of March, 2019.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE